UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MARIA ISABEL ALVARADO
NAVARRO, ARMANDO ROMERO
ROJO, and CHRISTIAN "RICARDO
RODRIGUEZ" ENRIQUE CAMACHO
ALVARADO, a minor by his mother and
natural guardian, MARIA I. ALVARADO
NAVARRO; and DIEGO "ALEXIS"
ELEAZAR CAMACHO ALVARADO, a
minor by his mother and natural guardian
MARIA I. ALVARADO NAVARRO,
for himself and all others similarly situated,

    *Plaintiffs*,

 -against-

BUILDING SERVICE, INC., d/b/a
GUADALUPE "LUPE" CASTILLO
RAMIREZ AND ESTEBAN ALVARADO
NAVARRO,

    *Defendants.*

23-CV-7343 (ARR) (MMH)

**OPINION & ORDER**

---

ROSS, United States District Judge:

  Plaintiffs, who performed cleaning and maintenance work for Building Service, Inc. ("Building Service"), filed this putative class action against the company and its operators (collectively, "defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*.; New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 and 650 *et seq*.; Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e *et seq*.; and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296 *et seq.* Before me is defendants' motion to dismiss the complaint in its entirety for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), and for lack of supplemental jurisdiction. For the reasons set forth below, I grant the motion.

## BACKGROUND

Plaintiff Maria Isabel Alvarado Navarro ("Maria") is a Mexican national who lives in Queens County, New York, without lawful immigration status. First Am. Compl. ¶¶ 2, 13, 32, 85–86 ("FAC"), ECF No. 14. Between December 2022 and June 2023, Maria worked for Building Service, which provides cleaning and maintenance services to commercial properties and businesses in the tri-state area. *Id*. ¶¶ 1–2.  Plaintiffs allege that Maria worked more than 60 hours per week, including multiple shifts lasting more than 10 hours, and often worked alongside her sons Christian Ricardo Rodriguez Enrique Camacho Alvarado ("Ricardo Rodriguez") and Diego Alexis Eleazar Camacho Alvarado ("Alexis") and her brother, Armando Romero Rojo ("Armando"), *id*. ¶ 2, 5, 32, who are also named as plaintiffs. Maria recorded her hours by "clock[ing]" in and out during her shifts, *id*. ¶ 45, but alleges that her time records were subsequently manipulated by Building Service's operators—individual defendants Guadalupe ("Lupe") Castillo Ramirez and Esteban Alvarado Navarro ("Esteban"), *id*. at 5 ¶¶ 18–19, ¶ 48—to "indicate shorter shifts than actually worked," *id*. ¶ 60.  The FAC is silent concerning hours, time records, and compensation for Ricardo Rodriguez, Alexis, and Armando.

In addition to manipulating Maria's hours, the FAC alleges that Lupe engaged in a range of other exploitative behaviors involving Maria and her family. *Id*. ¶¶ 33–39, 47–49. Specifically, the FAC alleges that Lupe verbally belittled Maria, *id*. ¶ 38, attempted to "involve" Maria's family in "dubious financial transactions," *id*. ¶ 34, and threatened retaliation for reporting illegal conduct, *id*. ¶ 47–48.

Plaintiffs allege that defendants failed to pay them earned wages in violation of the FLSA and NYLL, *id*. ¶¶ 50–57; failed to pay them overtime wages in violation of the FLSA and NYLL, *id*. ¶¶ 58–66; failed to pay them spread-of-hours compensation in violation of the NYLL,

2

*id*. ¶¶ 67–70; and failed to provide required wage statements and notices in violation of the NYLL, *id*. ¶¶ 75, 78–84. Additionally, the FAC alleges that defendants subjected Maria to unlawful discrimination on the basis of her national origin and immigration status in violation of Title VII and the NYSHRL. *Id*. ¶ 85–94.

Defendants move to dismiss the federal claims pursuant to Rule 12(b)(6), citing the dearth of factual details in the FAC. Defs.' Mem. Supp. Mot. Dismiss at 4–5, 9–11 ("Defs.' Mem."), ECF No. 22. As to the state law claims, defendants urge me to decline to exercise supplemental jurisdiction. *Id*. at 5, 11–12; *see* 28 U.S.C. § 1367(c); *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 460–61 (S.D.N.Y. 2014) ("When all federal claims are eliminated [at the motion to dismiss stage] . . . the balance of factors to be considered . . . typically points towards declining to exercise supplemental jurisdiction over any remaining state-law claims.").

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In assessing facial plausibility, I am required to accept the factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Lynch*, 952 F.3d at 75–76. I am not, however, "bound to accept" a "legal conclusion couched as a factual allegation" as true. *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). "Determining whether a plausible claim has been pled is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Lundy v. Cath. Health Sys. of Long Island*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

3

In assessing facial plausibility, my review is generally confined to the facts alleged in the complaint and any documents attached to it or incorporated by reference. *Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014); *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). I may not consider additional facts or allegations contained in plaintiffs' memorandum submitted in opposition to the motion. *See Walia v. Napolitano*, 986 F. Supp. 2d 169, 183–84 (E.D.N.Y. 2013) ("[B]ecause the court is limited to the pleadings in reviewing a motion to dismiss . . . the Plainitff's reliance on [documents not referenced in the complaint] is inapposite." (citation and internal quotation marks omitted)); *Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc.*, No. 12-CV-2285 (ADS), 2014 WL 5822628, at *9 (E.D.N.Y. Nov. 6, 2014) ("[I]n ruling on a 12(b)(6) motion, the Court cannot consider allegations contained solely in a legal brief or memoranda that were not substantiated by documents quoted in, attached to, or relied upon in a party's pleadings."). Here, the FAC includes no exhibits and does not refer to any other documents, so my review is confined to the four corners of the operative complaint.

## DISCUSSION

### I. Wage and Hour Claims.

The bulk of the FAC concerns plaintiffs' allegations that they were underpaid for the number of hours they worked, in violation of both the FLSA and NYLL. FAC ¶¶ 3, 7–8, 18–31, 50–77. Because the FAC lacks concrete allegations concerning the actual hours worked by or compensation provided to any individual, plaintiffs have not stated a plausible claim for unpaid wages or overtime premiums under either federal or state law.

#### 1. *Minimum wage*

To state a claim for minimum wage violation under the FLSA and NYLL, an employee must plead facts demonstrating that her "average hourly wage falls below the . . . minimum

4

wage." *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 402 (E.D.N.Y. 2015) (quoting *Lundy*, 711 F.3d at 115). "A plaintiff's average hourly wage is determined 'by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.'" *Id*. (quoting 29 C.F.R. § 778.109); *see also Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 506 (S.D.N.Y. 2013) (recounting same formula for minimum wage claims under the NYLL). Thus, in order for me to calculate the relevant hourly number, the complaint must include an estimate of each individual employee's total compensation and hours worked in a specific week. While FLSA plaintiffs are "not required . . . to keep careful records and plead their hours with mathematical precision," they are expected to "draw upon" their "memory and experience" to provide "sufficiently developed factual allegations." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013).

Here, the FAC does not contain either of the numerical estimates—total weekly hours and total weekly wages—necessary to calculate the hourly wage rate for any individual.[1] While the FAC contains repeated statements about the approximate number of hours Maria *generally* worked, *see* FAC ¶¶ 5, 41–43, 51, 61, 72–74, it does not state her actual hours or compensation for any specific week. The FAC contains *no* details concerning the hours worked or compensation provided to Ricardo Rodriguez, Alexis, or Armando. Without more information, plaintiffs' conclusory statements that they were not compensated "at the minimum wage for all

---

[1] In opposition to the motion to dismiss, plaintiffs have appended a proposed amendment that includes a table showing their hours and calculating the wages owed to them. Pls.' Opp. Mot. Dismiss, Ex. A, ECF No. 23. Because this evidence is not referenced or incorporated in the FAC, I cannot consider it in evaluating plaintiffs' pleadings at this stage. *See Garnett-Bishop*, 2014 WL 5822628, at *9.

5

hours worked," *id.* at 6 ¶ 19, are not enough to establish facial plausibility. *See Sudilovskiy v. City WAV Corp.*, No. 22-CV-469 (DG), 2022 WL 4586307, at *4 (E.D.N.Y. Sept. 29, 2022) ("Simply put, in order for plaintiffs' allegations to support a plausible minimum wage claim, the pleading must provide more detail than the conclusory statement that defendants failed to pay them the minimum wage."); *Henao v. Parts Auth., LLC*, No. 19-CV-10720 (LGS), 2020 WL 5751175, at *4 (S.D.N.Y. Sept. 25, 2020) ("Conclusory allegations that a defendant failed to pay a plaintiff for all hours worked or that a plaintiff's effective hourly wage fell below the minimum wage do not create a plausible claim."). I therefore grant defendants' motion to dismiss plaintiffs' minimum wage claims. Because the deficiencies I have identified could potentially be cured with additional information, the claims are dismissed without prejudice. *See Kling v. World Health Org.*, 532 F. Supp. 3d 141, 154 (S.D.N.Y. 2021) ("[D]ismissal with prejudice is appropriate when the flaws in pleading are incurable." (citation and internal quotation marks omitted)).

   2. *Overtime*

The FAC also lacks sufficient detail to support an inference that plaintiffs were improperly denied overtime compensation. Both the FLSA and NYLL require that employees be compensated at no less than "one and one-half times the regular rate" for any hours worked "in excess of" forty hours per week. 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.2. To plead a plausible overtime claim, a plaintiff must provide "sufficient detail" concerning their hours and compensation to "support a reasonable inference" of underpayment. *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). Generally, vague allegations about the number of hours "regularly worked," without more, are too conclusory to survive a motion to dismiss. *Dejesus*, 726 F.3d at 89 (quoting *Pruell v. Caritas Christi*, 678 F.3d

6

10, 12 (1st Cir. 2012) (internal quotation marks omitted)). "A plaintiff does not state a claim for unpaid FLSA overtime when she does 'not estimate her hours in any or all weeks or provide any other factual context or content,' but instead alleges only that 'she worked more than "forty hours" a week without being paid "1.5" times her rate of compensation,' as such pleadings merely 'rephrase' FLSA § 207(a)(1)." *Henao*, 2020 WL 5751175, at *2 (quoting *Dejesus*, 726 F.3d at 89).

Here, the FAC is devoid of concrete details concerning the weekly work schedule, regular wage rate, and actual compensation provided to any individual plaintiff. Without additional factual context or content, the FAC's assertions that plaintiffs "typically . . . worked at least seventy (70) hours per week," yet were "persistently underpaid the overtime premiums . . . to which [they were] entitled," FAC ¶¶ 5–6, amount to conclusory statements that fall short of establishing plausibility. Plaintiffs' claims for overtime compensation are likewise dismissed without prejudice.

### 3. *Spread-of-hours claim*

In addition to the minimum wage and overtime claims, the FAC also alleges that defendants failed to pay "spread-of-hours compensation" for certain shifts, FAC ¶¶ 8, 69–70, as required by New York state regulations. Having dismissed plaintiffs' FLSA claims at this early stage, I would generally decline to exercise supplemental jurisdiction over the remaining state-law wage claims. However, because I have granted plaintiffs leave to amend their other wage and hour claims, I briefly explain why plaintiffs' spread-of-hours claim must, by contrast, be dismissed with prejudice.

The FAC states that defendants violated the NYLL by failing to pay plaintiffs the "spread-of-hours premiums . . . owed pursuant to [NYCRR tit.] 12[,] §§ 142-2.2, -2.4." *Id*. ¶ 8. That provision, which is contained in the "minimum wage order" for "miscellaneous industries," NYCRR tit. 12, § 142-1.1, requires employers in certain industries to pay minimum-wage workers

a premium for working long shifts. *See Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 472–73 (E.D.N.Y. 2011) (explaining New York spread-of-hours regulations). The provision does not apply to employees who are covered by "any other minimum wage order," NYCRR tit. 12, § 142-1.1(a), including those in the "building services industry," which covers employees engaged in "servicing" and "cleaning" building space, *id*. §§ 141-1.1, -3.1. *See Almonte v. 437 Morris Park, LLC*, No. 14-CV-5951 (KPF), 2015 WL 7460019, at *3 (S.D.N.Y. 2015). The FAC describes plaintiffs' responsibilities as "cleaning and maintenance work" at properties serviced by Building Service. FAC ¶¶ 2, 47. Based on this job description—which is undisputed by defendants— plaintiffs are not entitled to recover spread-of-hours pay under NYCRR tit. 12, § 142-2.4, regardless of the number of hours they worked per shift. *See Jenkins v. Yellowstone Props., Inc.*, No. 17-CV-7764 (VEC), 2019 WL 4392955, at *3 (S.D.N.Y. Sept. 12, 2019) (explaining that because a plaintiff who worked as a "porter and janitor" was subject to the Building Services wage order, he was "not entitled to [spread-of-hours] pay as a matter of law"). As such, there are no additional facts that plaintiffs could plead that would establish their entitlement to wage premiums under NYCRR tit. 12, § 142-2.4. Because amendment would be futile, plaintiffs' fifth cause of action is dismissed with prejudice. *See Kling*, 532 F. Supp. 3d at 154.

## II. Discrimination Claims.

I next turn to plaintiffs' discrimination claims arising under Title VII and the NYSHRL. In essence, the FAC alleges that defendants harassed Maria and exploited her vulnerability as an undocumented immigrant by involving or attempting to involve her in fraudulent financial transactions. *See* FAC ¶¶ 33–39. The FAC asserts that defendants' behavior amounted to "disparate treatment on the basis of national origin [or immigration status]" and creation of a "hostile work environment." *Id*. ¶¶ 85–90.

8

To start, defendants argue that the Title VII claim should be dismissed due to plaintiffs' procedural failure to file charges with the Equal Employment Opportunity Commission ("EEOC") prior to filing suit. Defs.' Mem. at 10–11; *see* 42 U.S.C. § 2000e-5(f)(1); *Canty v. Wackenhut Corr. Corp.*, 255 F. Supp. 2d 113, 116–17 (E.D.N.Y. 2003) (discussing administrative exhaustion requirement for Title VII claims). In response, plaintiffs clarify that they have since received a right-to-sue letter, dated January 1, 2023, which they have attached as an exhibit to their memorandum. *See* Pls.' Mem. L. Opp. Mot. Dismiss ("Pls.' Opp."), Ex. C, ECF No. 23. As I previously explained with respect to plaintiffs' proffered wage table, *see supra* note 1, I may not consider this supplemental documentation as it is not referenced in the complaint. And regardless of plaintiffs' compliance with Title VII's administrative exhaustion requirement, their discrimination claims must be dismissed for failure to set forth sufficient factual matter which, accepted as true, would establish defendants' liability under either statute.[2]

In order to plead a disparate treatment claim, the Second Circuit has explained that "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) ("At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason . . . ."). An adverse employment action is "a materially adverse change in the terms and conditions of

---

[2] Because discrimination claims under Title VII and the NYHRS are considered "analytically identical," *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019), I do not differentiate between them here.

9

employment," *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006), such as a termination, decrease in wages, or demotion. *See Krul v. DeJoy*, 705 F. Supp. 3d 5, 44 (N.D.N.Y. 2023); *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, No. 23-CV-01932 (JLR), 2024 WL 3849192, at *10 (explaining that "workplace events that are unpleasant are not necessarily adverse employment actions") (S.D.N.Y. Aug. 16, 2024).

Here, the FAC fails to allege any specific "adverse employment action" taken against Maria. The FAC asserts that defendant Lupe "exploit[ed]" and "target[ed]" Maria in a manner that was "inherently discriminatory" and indicative of "bias against individuals of Mexican origin and undocumented status." FAC ¶¶ 86–88. However, the FAC fails to explain how any of Lupe's actions constitute a change in the "terms and conditions" of Maria's employment. *Joseph*, 465 F.3d at 90. Without a clear articulation of plaintiffs' theory of liability, I am unable to draw an interference of discrimination.

Likewise with plaintiffs' hostile work environment theory. "A hostile work environment claim typically involves a workplace that is 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 223 (E.D.N.Y. 2018) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). A well-pleaded claim must allege, inter alia, conduct that is "objectively severe or pervasive" and occurs "because of the plaintiff's [protected identity.]" *Id.* at 223–24 (quoting *Pantane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (per curiam)). Generally, the alleged instances of hostile conduct must be "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citation and internal quotation marks omitted). "Isolated acts" and "single incident[s]" are generally insufficient to demonstrate

10

a hostile work environment unless they are "extraordinarily severe." *Id*.

Here, plaintiffs' hostile work environment claim centers on (1) Lupe's alleged attempts to "involve" them in "dubious financial transactions," FAC ¶¶ 34, 89, and (2) Lupe's failure to use Maria's full name at work, *id*. ¶¶ 39, 89. Neither of these allegations is concrete enough for me to infer that plaintiffs faced an objectively hostile workplace. To start, the allegations of financial treachery are too vague and conjectural for me to evaluate. Plaintiffs do not allege that Lupe has *actually* victimized them financially—merely that they fear Lupe "may." *Id*. ¶ 36. Further, the FAC does not clearly allege facts supporting an inference that Lupe targeted plaintiffs because of their national origin or immigration status. Finally, the fact that Lupe addressed Maria in a manner suggestive "of intimacy" does not, without more, permit the inference that Lupe was "deliberate[ly] attempt[ing] to diminish [Maria's] identity and agency within the workplace." *Id*. ¶ 38. "Naked assertions of . . . discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." *Amaya*, 295 F. Supp. 3d at 220 (quoting *Sanders–Peay v. NYC Dep't of Educ*., No. 14-CV-4534 (CBA), 2014 WL 6473507, at *3 (E.D.N.Y. Nov. 18, 2014) (internal quotation marks omitted)).

In sum, because the complaint does not contain facts that give rise to an inference of disparate treatment or a hostile workplace, plaintiffs' eighth cause of action is dismissed without prejudice.

### III. Wage Notice & Statement Claims.

Finally, I address plaintiffs' remaining claims, *see* FAC ¶¶ 71–84, arising under section 195 of the NYLL. Having dismissed all of plaintiffs' federal claims, I decline to exercise supplemental jurisdiction over these state law claims. *See Jian Long Li v. Li Qin Zhao*, 35 F. Supp.

11

3d 300, 309–10 (E.D.N.Y. 2014). Additionally, in the interest of judicial economy and anticipation of plaintiffs' forthcoming amended complaint, I briefly note several other deficiencies in the substance of their wage notice and wage statement claims as they are currently pleaded.

Section 195(1) of the NYLL requires employers to provide employees with written notice that includes, among other things, the wage rate and basis at which they will be paid, the "regular pay day designated by the employer," and the "address of the employer's main office." N.Y. Lab. Law § 195(1)(a). Section 195(3) requires employers to "furnish each employee with a statement with every payment of wages" that lists, among other things, the employee's name, the "dates of work covered by that payment" and the rate and basis of pay. *Id*. § 195(3). The FAC alleges that defendants failed to satisfy their obligations under both sections. *See* FAC ¶¶ 71–84.

To survive a motion to dismiss in federal court, a plaintiff "bears the burden of alleging facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Calcano v. Swarovski N. Am. Ltd*., 36 F.4th 68, 75 (2d Cir. 2022) (citation and internal quotation marks omitted). This means the complaint must allege facts which, if true, would constitute a concrete "injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Allegations that a defendant failed to comply with a statutory procedural obligation, without more, are generally insufficient to establish standing. *Id*. at 440. In the context of section 195, the Second Circuit has explained that "a plaintiff cannot rely on technical violations of the Labor Law but must allege actual injuries suffered as a result of the alleged wage notice and wage statement violations." *Guthrie v. Rainbow Fencing Inc*., No. 23-350, slip op. at 7 (2d Cir. Aug. 30, 2024) (cleaned up); *see also Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 372–73 (E.D.N.Y. 2022). To establish standing, a plaintiff must "show some causal connection between the lack of accurate notices [or statements]" and some concrete "downstream harm," such as underpayment. *Guthrie*,

12

slip op. at 13–14; *see also id*. at 14 n.4 (collecting cases with sufficient allegations of downstream harm). For example, the plaintiff might allege that a wage statement showing "fewer hours than what [the plaintiff] actually worked" prevented her from demanding payment she was due, resulting in "tangible" financial harm. *Kaur v. Natasha Accessories Ltd*., No. 23-CV-6948 (JPO), 2024 WL 3429129, at *4 (S.D.N.Y. July 16, 2024).

Here, the FAC lacks sufficiently detailed allegations concerning the documentation provided to plaintiffs, as well as a clear articulation of the causal connection between the alleged "informational injury" and a concrete downstream harm. *See Guthrie*, slip. op. at 12. The FAC repeatedly states that Maria did not receive documentation that was "accurate," "comprehensive," or "proper," FAC ¶¶ 75, 80–81, but does not explain what information was missing or incorrect. In fact, the complaint does not state whether Maria (or any other plaintiff) received any notice or wage statements at all. These conclusory allegations, without more, are insufficient to support the inference that plaintiffs have suffered cognizable injury. *Cf. Reyes v. Crystal Window & Door Sys., Ltd.*, No. 23-CV-2578 (RPK), 2024 WL 4028308, at *4 (Sept. 3, 2024) (denying motion to dismiss where complaint alleged that wage notice listed "an inaccurate overtime rate and pay frequency"); *Kaur*, 2024 WL 3429129, at *4 (denying motion to dismiss where complaint alleged that plaintiff's "wage statements showed fewer hours than what she actually worked, which prevented her from determining and seeking payment for the precise amount of her unpaid wages" (cleaned up)).

In the event that plaintiffs elect to replead their wage statement or wage notice claims, they are encouraged to provide additional details concerning what, if any, wage documentation *was* provided to plaintiffs, and how the alleged inadequacies resulted in concrete harm.

13

## IV. Leave To Amend.

In opposing the motion to dismiss, plaintiffs requested leave to amend the complaint "to address any perceived deficiencies." Pls.' Opp. ¶¶ 50–58. Plaintiffs have also included a proposed amended complaint, *id*. Ex. B, that purports to accomplish as much. Defendants urge me to dismiss with prejudice based on their assessment that the proposed amendment is still inadequate and demonstrates that amendment would be futile. Defs.' Reply Supp. Mot. Dismiss at 8–9, ECF No. 24.

Rule 15 instructs that I should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Absent an "apparent or declared reason, such as undue delay, bad faith . . . repeated failure to cure deficiencies . . . or futility," justice requires that I permit plaintiffs to amend. *McBeth v. Gabrielli Truck Sales, Ltd.*, 731 F. Supp. 2d 316, 319 (E.D.N.Y. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, defendants urge me to deny leave to amend on the basis of futility.

With the exception of the spread-of-hours claim, which fails as a matter of law, I agree with plaintiffs that many of their claims are potentially curable with additional factual information. That said, I agree with defendants that the current proposed amendment is inadequate to cure all the deficiencies I have identified in this opinion. If plaintiffs elect to replead, any amended complaint should, consistent with this opinion, include substantially more factual details. Plaintiffs should not assume that leave to amend will be granted again and, as such, are encouraged to make any forthcoming amended complaint their last and best attempt.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the complaint in its entirety is GRANTED. With the exception of the spread-of hours claim, which is dismissed with prejudice,

14

plaintiffs are permitted to amend their complaint. Any amended complaint shall be filed, along with a motion to amend, within 21 days of the date of this order.

SO ORDERED.

                                                      /s/ *Allyne R. Ross*
                                                      Allyne R. Ross
                                                      United States District Judge

Dated:  September 18, 2024
         Brooklyn, New York